IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ALLEN FARRIS | § | |
|---|---|---|
| | § | CIVIL ACTION NO. 6:06cv242 |
| SHERIFF DWAYNE DAUGHERTY | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The plaintiff Allen Farris, proceeding *pro se*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights.  The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.  The sole named Defendant in the lawsuit is Dwayne Daugherty, the Sheriff of Wood County, Texas.

An evidentiary hearing was conducted on October 4, 2006, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment pursuant to 28 U.S.C. §636(c).

Farris testified that he had been in the Wood County Jail for about nine months.  He said that in the section where he was housed, there were eight tanks, holding eight inmates apiece.  He said that he had spent most of the time between February and August in Tank E, but that he was moved to a single cell for medical reasons, including headaches, chest pains, and rectal bleeding.  Farris said that he has seen a doctor for these problems, but when he asked for X-rays, these were denied.  He said that he could walk up to the front and see a nurse, but she always told him that he had to go through the jail administrator, Kevin Clanton, or there had to be a "life-threatening emergency."  Farris said that he wanted to see his family physician, but acknowledged that he had not sent a request to Clanton as he had been advised to do.  He added that to see the doctor, inmates had to talk to the nurse, who would then talk to the doctor.

Farris' complaint asserts that there is black mold in the living areas. He testified that E and F tanks had mold. One day in June, he said, after this lawsuit was filed, a jailer named Ty came in, and he, Farris, discussed the situation with him; a few days later, the inmates were moved off of E Tank and the living area was cleaned with bleach. Farris said that the mold was in the shower staffs, the ventilation shaft, and on the walls.

Farris stated that he suffered from headaches, which became worse a few weeks after he came into the jail. He said that he believed that these headaches were caused by the mold, but conceded that not all of the other inmates suffered from headaches. He wrote complaints to the sheriff about the mold, but received no response, so he filed a grievance in May. Then, Farris said, nothing was done until July, when the living areas were cleaned.

However, Farris said, the cleanup simply scrubbed the mold from the walls and bleached it out, but it came back. He said that E, F, G, and I tanks have been cleaned, but that D Tank, which also has mold, has not. He again speculated that his headaches and chest pains were caused by the mold, and said that other inmates are becoming sick as well. Farris also said that two or three times a month, two or three worms come up through the drainage system into the showers, and are usually washed back down. He said that he had not suffered any harm as a result of the worms.

Farris conceded that the worms were not related to the black mold. He said that he had smoked for 30 years, about a pack a day, and that he had never been told that he should quit although he is aware of the dangers of smoking.

Farris explained that when he put in a sick call request, he would be called up front to see Nurse Kathy Harris. He said that he has seen Dr. Waddleton "a couple of times," but that he did not ask the doctor if his headaches were related to the mold (although he did ask the nurse). Farris said that he also suffered from hepatitis C and a hernia, and that he mostly saw the medical personnel for these problems, as well as for back pain. Farris said that he could smell the bleach which was used to clean the cells, but that he did not know if his headaches were related to the bleach rather than the mold; he said that he did not complain of headaches until after he smelled the bleach.

Farris said that the inmates were supposed to clean the tanks on a daily basis, but that not all of the inmates participated in this task. He said that he was not an expert in black mold and that he never complained of any health problems resulting from the bleach, although Farris noted that he could not get that kind of treatment because Dr. Waddleton "does not want to hear about it."

Kevin Clanton, the jail administrator, also appeared at the <u>Spears</u> hearing and gave sworn testimony. Clanton said that on May 12, 2006, Farris filed a grievance about black mold, and that he, Clanton, did not ignore it, but told Farris that he would check into it. Clanton said that he contacted the Texas Department of Jail Standards and the Texas Department of Health to find out what to do. He said that he was told that if there was a problem with mold, to use a mixture of bleach and water in a 50-50 ratio, to clean over a period of five to seven days. The cleaning process was initiated, Clanton said, by cleaning empty tanks, so that inmates could be moved there was the occupied tanks were being cleaned. After the tanks were cleaned, they would be aired out for a day or so before inmates were moved in.

The first occupied tank to be cleaned was E Tank, Clanton said. After it was cleaned, Farris was not put back there, but was placed in F Tank; he was later moved to D Tank on his request. Clanton explained that Farris had told the medical staff that he had to apply medication to his backside, and the other inmates in his tank had been giving him a hard time.

After the tanks were cleaned, Clanton said, some of the inmates complained about the smell of bleach. Clanton said that he called the Texas Department of Health to investigate, and they sent an inspector. The inspector went, with Clanton, into C, E, and F Tanks, and did not indicate that there was any black mold; he (the inspector) said that there was "no reason to be alarmed," and that there were many different kinds of mold.

Clanton explained that if an inmate wants to see the nurse, there is a form to be filled out and given to the guard. This is taken to the control picket, where it gets picked up. He said that the jail has a contract with the doctor to provide medical care, and that neither the doctor nor the nurse are

jail employees. If an inmate needs an X-ray, Clanton said, this determination is made by the medical staff, and the jail does not interfere.

Farris declined the opportunity to cross-examine Clanton, but said that he was suing the Sheriff of Wood County because he is in charge of the jail and therefore responsible. When asked if the sheriff knew about the problem, Farris noted that he had sent him a request form and letter, which he said that he sent around the time that he wrote his first grievance.

The jail records show that on May 17, 2006, Farris gave his housing assignment as E Tank on a request slip, and on May 20, 2006, he gave his assignment as F Tank. On July 22, 2006, Farris sent a request slip asking to be moved to a single cell, and he was placed on D Tank, Cell 2.

On May 9, 2006, Farris filed a grievance complaining about several items, including mold. The response to the mold complaint was "we will check into this." On May 12, Farris filed another grievance complaining about mold, and the response was that "measures are being taken to clean the cells and vents besides the daily cleaning which should be done. This includes the whole jail."

Legal Standards and Analysis

The Fifth Circuit has held that complaints about squalid cell conditions can rise to the level of constitutional violations under Section 1983. <u>Bienvenu v. Beauregard Parish Police Jury</u>, 705 F.2d 1457 (5th Cir. 1983) (inmate complaint of roach infestations, leakage of rainwater, inoperative showers, and scum-encrusted toilet and washing facilities held to state a claim under Section 1983); <u>Foulds v. Corley</u>, 833 F.2d 52 (5th Cir. 1987) (inmate complaint of being required to sleep on the floor in an extremely cold cell where rats crawled over him held to state a claim under Section 1983). In <u>McCord v. Maggio</u>, 927 F.2d 844 (5th Cir. 1991), the plaintiff alleged that he lived in roach-infested, windowless, unlighted cells into which rain water and backed-up sewage leaked, although the Court noted that McCord would have to show an injury from these conditions on remand in order to prevail.

The Fifth Circuit has stated that like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components.

4

For the objective component, "extreme deprivations are required to make out a conditions-of-confinement claim." Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998) (citations omitted). The subjective component requires a showing of deliberate indifference to the inmates' health or safety. *See* Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994).

In the present case, it is debatable whether or not Farris has set out even an arguable claim on the objective component. He testified that there was "black mold," but acknowledged that he was not an expert on mold. There are many different types of mold, not all of which are toxic; the only black molds which produce mycotoxins are known as Strachybotrys and Memnoniella, both of which normally grow only on wetted materials containing cellulose (such as paper, cardboard, or ceiling tile). *See generally* http://www.allergybuyersclub.com/faqs/godishblackmold.shtml; http://arar.essortment.com/whatisblackmo_rfls.htm.

More significantly, however, Farris has entirely failed to show that the jail officials were deliberately indifferent to his safety. The evidence shows and Farris does not dispute that he filed a grievance about the mold in May of 2006, and the jail officials promptly began a cleanup campaign. They cleaned one tank at a time, beginning with an empty one, and then moved inmates around so that the occupied tanks could be cleaned. Clanton testified that he contacted the Texas Commission on Jail Standards and the Texas Department of Health for advice as to how to clean up the mold, and that he had an inspector come to the jail.

The Supreme Court has said that a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. However, the Court continued, an official's failure to alleviate a significant risk which he should have perceived, but did not, cannot be condemned as the infliction of punishment. Farmer v. Brennan, 511 U.S. at 837-38, 114 S.Ct. at 1979; *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

Here, Farris offers nothing to show that the risk to his safety was disregarded. On the contrary, once he brought the problem to the attention of the jail personnel, action was promptly taken to resolve the situation. This is the very antithesis of deliberate indifference. Farris has failed to show a constitutional violation and so his claim is without merit.

Furthermore, as noted above, the sole named Defendant is the Sheriff of Wood County, and Farris testified at the Spears hearing that he was suing Sheriff Daugherty because the Sheriff was in charge of the jail and responsible for what goes on. The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Farris has not shown that Sheriff Daugherty was personally involved in a constitutional violation, that wrongful action by the sheriff was causally connected to a constitutional violation, or that the sheriff implemented a constitutionally deficient policy which was a repudiation of constitutional rights and was the moving force behind a constitutional violation. Instead, the evidence before the Court, including Farris' own testimony at the Spears hearing, show that once he complained of mold to jail officials, action was taken to alleviate the problem. He has not shown that a constitutional violation occurred at all, and so his claim against the Sheriff is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any

portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Farris' complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **27** day of **October, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE